1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  MULTIMEDIA PATENT TRUST,                    CASE NO. 07-CV-0747-H
                                                (CAB)
12                              Plaintiff,
                                                ORDER DENYING
13        vs.                                   COUNTER-DEFENDANT'S
                                                MOTIONS TO STRIKE OR
14  MICROSOFT CORPORATION,                      DISMISS DEFENDANTS'
    GATEWAY INC., GATEWAY                       AFFIRMATIVE DEFENSES
15  PROFESSIONAL LLC, GATEWAY                   AND COUNTERCLAIMS, AND
    COMPANIES, INC., GATEWAY                    DENYING THIRD-PARTY
16  MANUFACTURING LLC,                          DEFENDANT'S MOTIONS TO
    GATEWAY DIRECT, INC.,                       STRIKE OR DISMISS
17  GATEWAY U.S. RETAIL, INC., and              DEFENDANTS'
    DELL INC.,                                  THIRD-PARTY CLAIMS
18
                                Defendants.
19  _____

20
    MICROSOFT CORPORATION,
21  GATEWAY INC., GATEWAY
    PROFESSIONAL LLC, GATEWAY
22  COMPANIES, INC., GATEWAY
    MANUFACTURING LLC,
23  GATEWAY DIRECT, INC.,
    GATEWAY U.S. RETAIL, INC., and
24  DELL INC.,

25                              Counterclaimants,
          vs.
26

27  MULTIMEDIA PATENT TRUST,

28                              Counter-defendant.

1

_____

2   MICROSOFT CORPORATION,
    GATEWAY INC., GATEWAY
3   PROFESSIONAL LLC, GATEWAY
    COMPANIES, INC., GATEWAY
4   MANUFACTURING LLC,
    GATEWAY DIRECT, INC.,
5   GATEWAY U.S. RETAIL, INC., and
    DELL INC.,
6
7               Third-party Plaintiffs,

8       vs.

9   LUCENT TECHNOLOGIES INC.,

10              Third-party Defendant.
    _____

11

12          On April 24, 2007, plaintiff Multimedia Patent Trust ("MPT") filed a complaint

13  against defendants Microsoft Corporation ("Microsoft"), Gateway Inc., Gateway

14  Professional LLC, Gateway Companies, Inc., Gateway Manufacturing LLC, Gateway

15  Direct, Inc., Gateway US Retail, Inc. (collectively "Gateway"), and Dell Incorporated

16  ("Dell," and collectively with Gateway and Microsoft "Defendants").  (Doc. No. 1.)

17  MPT is a Delaware Statutory Trust created by Lucent Technologies Inc. ("Lucent") on

18  November 28, 2006 under the Delaware Statutory Trust Act, 12 Del. Code Ann. § 3801

19  et seq.  (Id. ¶¶ 4-5.)  After MPT was established, Lucent transferred, assigned,

20  conveyed, delivered, and vested to MPT all of Lucent's interests in three patents (the

21  "Patents-in-Suit"): United States Patent Number 5,136,377, "adaptive Non-Linear

22  Quantizer," issued to James D. Johnston et al. on August 4, 1992 ("the '377 Patent");

23  United States Patent Number 5,500,678, "Optimized Scanning of Transform

24  Coefficients in Video Coding," issued to Atul Puri on March 19, 1996 ("the '678

25  Patent"); and United States Patent Number 5,563,593, "Video Coding with Optimized

26  Low Complexity Variable Length Codes," issued to Atul Puri on October 8, 1996 ("the

27  '593 Patent").  (Id. ¶¶ 6, 18-21.)  MPT's complaint alleged that Defendants infringed

28  the Patents-in-Suit in violation of 35 U.S.C. § 1 et seq.  (Id. ¶¶ 3, 22-42.)

On June 29, 2007, Defendants filed answers to MPT's complaint that included affirmative defenses of unenforceability due to alleged inequitable conduct of the patent applicants, their attorneys, and/or their agents.  (Doc. Nos. 30-32.)  Defendants also asserted counterclaims against MPT and third-party claims against Lucent including claims for: declaratory judgment regarding the non-infringement, invalidity, and unenforceability of each of the Patents-in-Suit; declaratory judgment of Defendants' license to use the Patents-in-Suit; declaratory judgment that Lucent was contractually prohibited from assigning the Patents-in-Suit to MPT; fraudulent transfer under Delaware's Uniform Fraudulent Transfer Act ("DUFTA"); common law fraud; tortious interference with contract; tortious interference with business expectancy/prospective economic advantage;[1] breach of contract; violation of 15 U.S.C. § 1; monopolization under 15 U.S.C. § 2; attempted monopolization under 15 U.S.C § 2; breach of duty of good faith and fair dealing; and violations of § 17200 et seq. of California's Business and Professions Code.  (Id.)

On July 31, 2007, MPT and Lucent filed motions to dismiss or strike a number of Defendants' defenses, counterclaims, and third-party claims.  MPT filed motions to strike Defendants' inequitable conduct defenses and to dismiss, for failure to state a claim, Defendants' counterclaims for declaratory judgment of unenforceability based on alleged inequitable conduct.  (Doc. Nos. 47-49.)

Lucent filed a motion to dismiss, for failure to state a claim, Gateway's third-party claims for breach of contract, breach of the duty of good faith and fair dealing, tortious interference with contract, tortious interference with prospective economic advantage, fraudulent transfer under DUFTA, common law fraud, and

---

[1] Under California law, the interference with "business expectancy" and interference with "prospective economic advantage" refer to the same tort.  Cf. JRS Products, Inc. v. Matsushita Elec. Corp. of America, 115 Cal. App. 4th 168, 180 (2004); Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 378 (1995) (describing various names for torts characterized by interfering with a business relationship that has not yet settled into a contract).  The parties use both terms in their papers, and the Court will use the terms interchangeably in this order.

violation of California Business and Professions Code § 17200 et seq.  (Doc. No. 53)
Lucent also moved to dismiss five of Gateway's infringement-related declaratory
judgment claims for lack of subject matter jurisdiction.  (Id.)  Finally, with respect to
Gateway, Lucent moved to dismiss or strike pursuant the Rule 12(f) the following
claims: breach of contract, violation of 15 U.S.C. § 1, monopolization under 15 U.S.C.
§ 2, attempted monopolization under 15 U.S.C. § 2, breach of duty of good faith and
fair dealing, tortious interference with contract, and tortious interference with
prospective economic advantage.  (Id.)

Lucent also filed a motion to dismiss, for failure to state a claim, Dell's claims
for fraudulent transfer under DUFTA, common law fraud, and tortious interference with
contract.  (Doc. No. 54.)  Similarly, Lucent filed a motion to dismiss, for failure to state
a claim, Microsoft's claims for fraudulent transfer under DUFTA, common law fraud,
declaratory judgment that the assignment to MPT was a void act, tortious interference
with contract, and tortious interference with business expectancy for failure to state a
claim and to dismiss Microsoft's declaratory judgment claims for lack of subject matter
jurisdiction.  (Doc. No. 55.)  As with the Gateway claims, Lucent also moved to dismiss
Dell's and Microsoft's infringement-related declaratory judgment claims for lack of
subject matter jurisdiction.  (Doc. Nos. 54-55.)

On August 3, 2007, MPT filed a motion joining Lucent's motion to dismiss
Gateway's claims for breach of contract, violation of 15 U.S.C. § 1, monopolization
under 15 U.S.C. § 2, attempted monopolization under 15 U.S.C. § 2, breach of the duty
of good faith and fair dealing, tortious interference with contract, tortious interference
with prospective economic advantage, fraudulent transfer under DUFTA, common law
fraud, and violation of § 17200 et seq. of California Business and Professions.  (Doc.
No. 56.)

On August 27, 2007, Dell filed an opposition to MPT's motion to strike Dell's
affirmative defenses based on alleged inequitable conduct and to dismiss Dell's
counterclaim for declaratory judgment of the unenforceability of the Patents-In-Suit

based on alleged inequitable conduct.  (Doc. No. 72.)  Dell also filed an opposition to Lucent's motion to dismiss Dell's claims for declaratory judgment, fraudulent transfer under DUFTA, common law fraud, and tortious interference with contract.  (Doc. No. 73.)

Also on August 27, 2007, Gateway filed an opposition to Lucent's motion to dismiss Gateway's claims for breach of contract, breach of the duty of good faith and fair dealing, interference with contract, interference with a prospective economic advantage, violation of California's Business and Professionals Code § 17200, declaratory judgment, violation of 15 U.S.C. § 1, monopolization under 15 U.S.C. § 2, and attempted monopolization under 15 U.S.C. § 2.  (Doc. No. 76.)

Also on August 27, 2007, Microsoft filed an opposition to MPT's motion to strike Microsoft's affirmative defenses and dismiss Microsoft's counterclaims alleging that the Patents-In-Suit are unenforceable due to inequitable conduct during their prosecution in the United States Patent and Trademark Office ("PTO").  (Doc. No. 79.) Microsoft also filed an opposition to Lucent's motion to dismiss Microsoft's claims for declaratory judgment that Microsoft is licensed to use the Patents-in-Suit, declaratory judgment that the creation of MPT and transfer of the Patents-in-Suit was a void act, fraudulent transfer under DUFTA, common law fraud, tortious interference with contract, and tortious interference with business expectancy.  (Doc. No. 80.)

Microsoft has filed a notice of joinder regarding Dell's oppositions and Gateway's opposition.  (Doc. Nos. 77-78, 81.)  Gateway has filed a notice of joinder regarding Dell's oppositions and Microsoft's oppositions.  (Doc. No. 82-85.)  Dell has filed a notice of joinder regarding Microsoft's oppositions and Gateway's opposition. (Doc. Nos. 86-88.)

On August 31, 2007, Lucent filed reply briefs regarding its motions to dismiss Defendants' third party claims.  (Doc. Nos. 91-93.)  Also on August 31, 2007, MPT filed reply briefs regarding its motions to strike Defendants' defenses and dismiss Defendants' counterclaims based on alleged inequitable conduct.  (Doc. Nos. 95-97.)

On September 10, 2007, the Court held a hearing to consider these various motions. Attorneys appearing included: Ephraim Starr and Robert Appleby, counsel for Multimedia Patent Trust and Lucent Technologies Inc.; John Gartman, counsel for Microsoft Corporation; Joel Freed, counsel for Dell Inc.; and Steven Daniels, counsel for Gateway Companies, Inc., Gateway Manufacturing LLC, Gateway Direct, Inc., and Gateway U.S. Retail, Inc. For reasons set forth below, the Court denies MPT's motion to strike Dell's defenses and dismiss Dell's counterclaim for inequitable conduct. The Court also denies MPT's corresponding motions against Microsoft and Gateway. The Court denies Lucent's motion to dismiss Gateway's third-party complaint and denies this motion as joined by MPT, though this dismissal is without prejudice as to the allegedly duplicative claims from 02-CV-02060 ("the '02 Case"). The Court denies Lucent's corresponding motions to dismiss the third-party complaints of Microsoft and Dell.

**Background**

The Moving Picture Experts Group ("MPEG") is a committee charged with the development of video and audio encoding standards. (Microsoft's Answer and Countercl. Against MPT and Third Party Claims Against Lucent ("Microsoft's Answer") ¶ 77; Gateway's Original Answer and Countercl. MPT's Compl. and Third Party Claims Against Lucent ("Gateway's Answer") ¶ 73.) The MPEG-2 Standard is an international standard relating to video data compression and data transport. (Microsoft's Answer ¶ 78; Gateway's Answer ¶ 74.) "MPEG-2 Essential Patents" are patents regarding apparatuses and/or methods necessary for compliance with the MPEG-2 Standard. (Microsoft's Answer ¶ 79; Gateway's Answer ¶ 75.)

Alcatel S.A., which has since merged with Lucent to form Alcatel-Lucent ("Alcatel"), is a French telecommunications corporation. (Microsoft's Answer ¶ 72, 76; Gateway's Answer ¶¶ 65, 72; Answer Compl. and Countercl. Dell Against MPT and Lucent ("Dell's Answer") ¶ 59.) In or about 1997, certain companies having the right to license or sublicense MPEG-2 Essential Patents including Alcatel, entered into a

licensing agreement entitled "Agreement Among Licensors," agreeing to put their MPEG-2 Essential Patents into a patent pool for licensing by MPEG LA, L.L.C. ("MPEG LA") to numerous participating licensees.  (Microsoft's Answer ¶ 80; Gateway's Answer ¶ 76.)  As the licensing administrator, MPEG LA entered into license agreements with participating licensors on behalf of the consortium of participating licensees who license MPEG-2 Essential Patents from the MPEG LA patent pool.  (Microsoft's Answer ¶ 81; Gateway's Answer ¶ 77.)

Section 2.3 of the Agreement Among Licensors states "Each Party shall grant to the Licensing Administrator a worldwide, nonexclusive, non-transferable license or sublicense under all MPEG-2 Essential Patent(s) which the Party and its Affiliate(s), if any, presently or in the future, have the right to license or sublicense (without payment of royalties or other consideration to a third party(ies)), with a right of the Licensing Administrator to grant sublicenses . . . ."  (Microsoft's Answer ¶ 82; Gateway's Answer ¶ 78.)  Furthermore, under section 2.6 of the Agreement Among Licensors, if a Party or its Affiliate(s) acquires the right, presently or in the future, to license additional Patent(s) to the Licensing Administrator pursuant to Section 2.3, those MPEG-2 Essential Patents not already in the MPEG LA patent pool shall be added to the patent pool.  (Microsoft's Answer ¶ 84; Gateway's Answer ¶ 80.)

On January 4, 2002, Gateway executed an MPEG-2 Patent Portfolio License ("MPEG-2 License") with MPEG LA.  (Gateway's Answer ¶ 84.)  On February 28, 2006, Microsoft executed an MPEG-2 License with MPEG LA.  (Microsoft's Answer ¶ 86.)  Dell also has an MPEG-2 License with MPEG LA.  (Dell's Answer ¶ 71.)

On April 2, 2006, Lucent entered into an Agreement and Plan of Merger (the "Merger Agreement") with Alcatel S.A. (Microsoft's Answer ¶ 72; Gateway's Answer ¶ 68.)  The Merger Agreement included a statement that "Lucent will not, and will not permit any of its Subsidiaries to, sell, transfer, lease, license, pledge, encumber or otherwise dispose of any material . . . assets or stock."  (Microsoft's Answer ¶ 73; Gateway's Answer ¶ 69).  On April 4, 2006, Lucent and Alcatel submitted filings to the

SEC that included a statement that "[t]he way the proposed merger is structured, all of the patents will continue to be owned by Lucent and its subsidiaries." (Microsoft's Answer ¶ 74; Gateway's Answer ¶ 70).

On November 21, 2006, nine days before the completion of the merger between Alcatel and Lucent, Lucent executed an agreement (the "Trust Agreement") creating a Delaware statutory trust to which it assigned certain patents, including the Patents-in-Suit. (Microsoft's Answer ¶ 105; Gateway's Answer ¶ 105.) The Trust Agreement provides that Lucent, as the settlor of MPT, will irrevocably contribute to MPT all of its right, title, and interest in, to, and under the Trust Patents, including the Patents-in-Suit. (Gateway's Answer ¶ 106.) On November 28, 2006, two days before the completion of the merger between Alcatel and Lucent, Lucent entered into a patent assignment executed by Lucent, as the Assignor, and MPT, as the Assignee (the "Patent Assignment"). (Microsoft's Answer ¶ 107; Gateway's Answer ¶ 107.) Pursuant to the Patent Assignment, Lucent assigned the Trust Patents, including the Patents-in-Suit, to MPT. (Microsoft's Answer ¶ 108; Gateway's Answer ¶ 108.)

On April 24, 2007, MPT filed a complaint in the instant suit alleging that Defendants infringed the Patents-in-Suit in violation of 35 U.S.C. § 1 et seq. (Compl. ¶¶ 1-42.) On June 29, 2007, Defendants filed answers to MPT's complaint, in which Defendants pleaded the affirmative defense of unenforceability based on alleged inequitable conduct, and also alleged counterclaims against MPT and third-party claims against Lucent, including claims for declaratory judgment regarding the non-infringement, invalidity, and unenforceability of each of the Patents-in-Suit, declaratory judgment of Defendants' license to use the Patents-in Suit, declaratory judgment that Lucent was contractually prohibited from assigning the Patents-in-Suit to MPT, fraudulent transfer under Delaware's Uniform Fraudulent Transfer Act ("DUFTA"), common law fraud, tortious interference with contract, tortious interference with prospective economic advantage, breach of contract, violation of 15 U.S.C. § 1, monopolization under 15 U.S.C. § 2, attempted monopolization under 15

U.S.C § 2, breach of duty of good faith and fair dealing, and violations of § 17200 et seq. of California's Business and Professions Code.  (Microsoft's Answer ¶¶ 51, 63-207); Gateway's Answer ¶¶ 55-57, 60-193; Dell's Answer ¶¶ 54-87.)

On July 31, 2007, MPT filed motions to strike Defendants' affirmative defenses based on alleged inequitable conduct and to dismiss,  for failure to state a claim, Defendants' counterclaims for declaratory judgment of the unenforceability of the Patents-in-Suit based on alleged inequitable conduct.  (Notice Mot. and Mot. MPT Strike Dell's Defenses and Dismiss Dell's Countercl. Inequitable Conduct; Notice Mot. and Mot. MPT Strike Microsoft's Defense and Dismiss Microsoft's Countercl. Inequitable Conduct; Notice Mot. and Mot. MPT Strike Gateway's Defenses and Dismiss Gateway's Countercl. Inequitable Conduct.)  Also on July 31, 2007, Lucent filed motions to dismiss Defendants' claims against Lucent.  (Lucent's Notice Mot. and Motion Dismiss Gateway's Third-Party Complaint Pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Strike Certain Claims Pursuant Fed. R. Civ. P. 12(f); Lucent's Notice Mot. and Mot. Dismiss Dell's Countercl. Pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6); Lucent's Notice Mot. and Mot. Dismiss Microsoft's Third-Party Complaint Pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6).)

**Discussion**

**I.    Failure to Plead Inequitable Conduct with Particularity**

**A.    Legal Standard**

The circumstances constituting claims for fraud must be stated with particularity.  See Fed. R. Civ. P. 9(b).  If a claim is not pled with sufficient particularity, a court may dismiss it  for failure to state a claim for which relief can be granted.  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

Similarly, a party may move to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  See Fed. R. Civ. Proc. 12(f).  In all averments of fraud, including affirmative defenses, the circumstances constituting the fraud must be stated with particularity.  See Fed. R. Civ. P. 9(b); see also 5A Charles

Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 1297 n.28 (3d ed. 2004).  In determining a motion to strike, a district court must view the pleadings in the light most favorable to the pleader.  <u>See</u> <u>Taylor v. Quall</u>, 471 F. Supp. 2d 1053, 1059 (C.D. Cal. 2007); <u>Lazar v. Trans Union LLC</u>, 195 F.R.D. 665, 669 (C.D. Cal.2000); <u>see also</u> William W. Schwarzer, et al., <u>California Practice Guide: Federal Civil Procedure Before Trial</u> ¶ 9:406, p. 9-114 (2007).  Motions to strike an affirmative defense are generally disfavored, but the court may properly grant them when the defense is insufficient as a matter of law.  <u>See</u> <u>Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1057 (5th Cir. 1982); <u>California ex rel. State Lands Comm'n  v. United States</u>, 512 F. Supp. 36, 38 (N.D. Cal. 1981); <u>see also</u> Schwarzer, et al., <u>supra</u> ¶¶ 9:371, 378, p. 9-107, 109 (2006).

Although motions to strike under Rule 12(f) or dismiss pursuant to Rule 12(b)(6) are generally considered procedural matters governed by the law of the regional circuit, the sufficiency of inequitable conduct pleadings is governed by Federal Circuit law. <u>See</u> <u>Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions.</u>, 482 F.3d 1347, 1356 (Fed. Cir. 2007); <u>Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Systems, LLC</u>, 350 F.3d 1327, 1344 (Fed. Cir. 2003).

As with claims, the inequitable conduct affirmative defense falls within the strictures of Rule 9(b).  <u>See</u> <u>Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.</u>, 482 F.3d 1347, 1356 (Fed. Cir. 2007);  Wright & Miller, <u>supra</u>, § 1297 n.28.  Therefore, an inequitable conduct defense to a patent infringement claim may be stricken pursuant to Rule 12(f) for failure to plead with particularity.  <u>See</u> <u>Chiron Corp. v. Abbott Labs.</u>, 156 F.R.D. 219, 220-21 (N.D. Cal. 1994).

Inequitable conduct is a breach of the patentee's duties to the PTO of candor, good faith, and honesty.  <u>See</u> <u>Warner-Lambert Co. v. Teva Pharms. USA, Inc.</u>, 418 F.3d 1326, 1342 (Fed. Cir. 2005).  This can occur through affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false information coupled with an intent to deceive.  <u>See</u> <u>id.</u>

07cv747

1
2
3

**B.    MPT's Motions to Strike Defendants' Affirmative Defenses and Dismiss Defendant's Counterclaims for Failure to Plead with Sufficient Particularity**

4
5
6
7
8
9
10
11
12

MPT argues that the following affirmative defenses, which allege that the Patents-in-Suit are unenforceable due to inequitable conduct, should be stricken for failure to plead with sufficient particularity: Dell's tenth, eleventh, and twelfth affirmative defenses, which raise a separate defense for each patent; Microsoft's fifth affirmative defense, which raises the defense for all three patents; and Gateway's fifteenth, sixteenth, and seventeenth affirmative defenses, which raise a separate defense for each patent.   MPT further argues that Defendants' corresponding declaratory judgment counterclaims of unenforceability due to inequitable conduct should be dismissed for failure to plead with sufficient particularity.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

As previously discussed, the affirmative defense of inequitable conduct falls within the strictures of Rule 9(b).  See Central Admixture Pharmacy Servs., Inc., 482 F.3d at 1356 (upholding dismissal of inequitable conduct defense based on allegation that "during prosecution of the . . . patent, the patentee failed to disclose all of the relevant prior art known to it" and that "by manipulation of various measurements and units, the patentee sought to mislead the Patent and Trademark Office regarding the relationship between the claimed invention and the prior art.").  The Court concludes, however, that Defendants have pled their inequitable conduct defenses with sufficient particularity to survive MPT's motions to dismiss.  As opposed to the pleading found deficient in Central Admixture Pharmacy Servs., Inc., Defendants identified the inventors and their attorneys and agents as the individuals who breached their duty of candor to the PTO, and the prior art which was allegedly withheld from the PTO. Accordingly, the Court denies MPT's motions to dismiss Defendants' affirmative defenses that the Patent-in-Suit are unenforceable by virtue of inequitable conduct.

27
28

With regard to the declaratory judgment counterclaims, MPT raises substantially the same arguments, and the Court similarly concludes that Defendants have pled these

1   counterclaims with sufficient particularity and denies MPT's motions to dismiss these

2   counterclaims.[2]

3   **II.     Other Motions To Dismiss for Failure to State A Claim Upon Which Relief**

4           **Can Be Granted**

5           **A.     Legal Standard**

6           A motion to dismiss for failure to state a claim upon which relief can be granted

7   pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a

8   claim.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated on other grounds,

9   Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).  Rule 12(b)(6) permits

10  dismissal of a claim either where that claim lacks a cognizable legal theory, or where

11  insufficient facts are alleged to support the claim's theory.  See Balistreri v. Pacifica

12  Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  While a claim does not need detailed

13  factual allegations to survive a motion to dismiss, a party's obligation to provide the

14  grounds of its entitlement to relief requires "more than labels and conclusions" or a

15  "formulaic recitation of the elements of a cause of action."   See Bell Atlantic Corp.,

16  127 S. Ct. at 1964-65.  Rather, to survive a motionf to dismiss pursuant to Rule

17  12(b)(6), factual allegations must be sufficient, when taken as true, to raise a right to

18  relief above the speculative level, on the assumption that all the allegations in the

19  complaint are true, even if doubtful in fact. Id. at 1965.  A complaint may proceed even

20  though proof seems improbable or recovery is very remote and unlikely.  Id.

21          Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any

22  material facts in support of the allegation.  See North Star Int'l v. Arizona Corp.

23  Comm'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, even a liberal interpretation

24  of a claim may not "supply essential elements of the claim that were not initially pled."

25  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  If a

26

27          [2]MPT also argues that Gateway did not file a timely opposition to this motion.  Since Gateway
28  filed a notice of joinder to Dell's opposition one day after these papers were due, however, the Court
    exercises its discretion to accept Gateway's opposition as set forth in Dell's argument..

complaint fails to state a claim, the court should grant leave to amend unless the pleading could not be cured by the allegation of other facts.  See <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

Allegations of fraud must also meet the particularity requirements of Rule 9(b) and must therefore be specific enough to give the non-moving party notice of the particular misconduct alleged so that they can defend against the charge and not just deny that they have done anything wrong.  See  <u>Bly-Magee</u>, 236 F.3d at 1019 (9th Cir. 2001).   "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."  <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989).

**B.**      **Lucent's Motions to Dismiss Defendants' Third-Party Claims for Failure to State a Claim**

Lucent argues that the following third-party claims should be dismissed for failure to state a claim:  Dell's claims for fraudulent transfer under DUFTA, common law fraud, and tortious interference with contract; Microsoft's claims for fraudulent transfer under DUFTA, common law fraud, declaratory judgment that the assignment of the Patents-in-Suit to MPT was a void act, tortious interference with contract, and tortious interference with business expectancy; and Gateway's claims for fraudulent transfer under DUFTA, common law fraud,  breach of contract, breach of the duty of good faith and fair dealing, tortious interference with contract, tortious interference with prospective economic advantage, tortious interference with contract, and violation of California Business and Professions Code § 17200 et seq.  MPT joins Lucent's motion with respect to the corresponding Gateway counterclaims against it.[3]

**1.**      **Defendants' Claims for Fraudulent Transfer under DUFTA**

Lucent moves to dismiss Defendants' third-party claims that it violated DUFTA. Defendants all argue that they have pled sufficient facts to support a claim under

---

[3]In this section, the Court will refer to "Lucent's" motions, but the same rationale applies to the extent that MPT has joined the motion against Gateway.

§ 1304(a)(1) of DUFTA.  Section 1304(a)(1) states that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor.

6 Del. Code § 1304(a)(1).  Although Lucent argues that Defendants have failed to allege they are a creditor of Lucent, under DUFTA a creditor is any person who has a right to payment, whether the creditor's right to payment arose before or after the transfer was made or the obligation was incurred.  See 6 Del. Code §§ 1301(3), (4), 1304(a)(1).  In Dell's third-party claim, Dell alleged that:

> Alcatel Lucent is a licensor and licensee of MPEG LA.  Pursuant to its Agreement Among Licensors with MPEG LA, Alcatel Lucent has granted MPEG LA licensing rights to all patents of Alcatel Lucent and its affiliates that are essential to the MPEG-2 standard.  Dell is informed and believes and, on that basis, alleges that Lucent and/or MPT contend that the Patents-In-Suit are essential to the MPEG-2 standard and thus are within the grant of licensing rights by Alcatel to MPEG LA.

(Dell's Answer ¶ 59.)  Dell also alleges that:

> In an effort to avoid Dell's license under the Patent Portfolio License to all essential MPEG-2 patents of MPEG LA's licensors and their affiliates, from the effective date of Dell's license (June 1, 1994), Lucent created MPT and assigned the Patents-In-Suit to MPT for the sole purpose of evading Dell's Patent Portfolio License and depriving Dell of its benefits under that license. Lucent undertook these actions with the intent to defraud Dell.

(Id. ¶ 73.)  Similarly, Microsoft alleges that:

> Alcatel granted MPEG LA licensing rights to all MPEG-2 Essential Patents which Alcatel and its Affiliate(s) presently or in the future have the right to license or sublicense . . . . [I]f a Party or its Affiliate(s) acquires the right, presently or in the future, to license additional Patent(s) to the Licensing Administrator pursuant to Section 2.3, those MPEG-2 Essential Patents not already in the MPEG LA patent pool shall be added to the patent pool.

(Microsoft's Answer ¶¶ 82, 84.)  Gateway made similar allegations.  (See Gateway's Answer ¶¶ 78, 80.)  At least at the motion to dismiss stage, the Court concludes that these allegations are sufficient to allege a claim under DUFTA.

Lucent's argument that Defendants have failed to allege sufficient facts supporting a fraudulent transfer also fails.  A "transfer" under DUFTA means "every

07cv747

mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." 6 Del. Code § 1301(12). Defendants allege that Lucent assigned the Patents-in-Suit to MPT on November 28, 2006, attempting to place them out of reach of MPEG-2 licensees including Defendants. (See Dell's Answer ¶¶ 72-74; Microsoft's Answer ¶¶ 105-107; Gateway's Answer ¶¶ 105-107.) The Court concludes that these allegations, viewed under the standards of a motion to dismiss, are sufficient to allege a transfer under DUFTA.

Regarding Lucent's argument that Defendants failed to allege sufficient facts regarding Lucent's intent to defraud, the Court notes that allegations of intent to defraud do not have to be pled with particularity, but may be pled generally. See Fed. R. Civ. P. 9(b). Under this standard, the Court concludes that Defendants have sufficiently alleged that Lucent transferred the Patents-in-Suit to MPT with the intent to defraud. (See Dell's Answer ¶ 73, Microsoft's Answer 178; Gateway's Answer ¶ 180; see also Microsoft's Answer ¶¶ 105-16.) Accordingly, the Court denies Lucent's motions to dismiss the Defendants' DUFTA third-party claims.

### 2.     Defendants' Claims for Common Law Fraud

Lucent moves to dismiss Defendants' claims that it committed common law fraud. Under Delaware law, common law fraud refers to the widely used five element test for misrepresentation: (1) a false representation or failure to disclose, (2) knowledge of falsity or reckless indifference to the truth, (3) intent to induce reliance, (4) reliance, and (5) damage. Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 901 A.2d 106 (Del. 2006). Defendants contend that Lucent fraudulently created the trust for the purpose of depriving them of their license rights and point to an opinion stating that Delaware courts "will not give effect to a spendthrift trust that has no economic reality and whose only function is to enable the settlor to control and enjoy the trust property without limitations or restraints. . . ." Kulp v. Timmons, No. Civ.A.1946-S, 2002 WL 1824909, at *5 (Del. Ch. 2002).

Defendants' allege that shortly before its merger with Alcatel, Lucent created MPT and assigned the Patents-in-Suit to MPT to avoid licensing obligations that would have resulted from the merger.  (See, e.g. Gateway's Answer ¶¶ 105-09, 185-86.)  They further allege that this transfer was in violation of the Merger Agreement and Lucent's SEC fillings and that Lucent concealed the transfer from the public and from Defendants.  (See, e.g. Gateway's Answer ¶¶ 69-71, 105.)  Defendants also assert that Lucent received no consideration for the assignment, and although it purported to convey substantially all rights in the Patents-in-Suit to MPT, it retained substantially all of the benefits of the Patents-in-Suit.  (See, e.g. Gateway's Answer ¶¶ 109-17.)

Taken as a whole with the totality of the pleadings, the allegations are sufficient to establish the elements of common law fraud.  Accordingly, the Court denies these motions.

### 3.    Defendants' Claims for Tortious Interference with Contract

Lucent argues that Defendants have failed to allege sufficient facts to support their intentional interference with contract claims because they failed to allege an actual breach or disruption of a contractual relationship.  To state a claim for intentional interference with contract , a plaintiff must plead (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  See Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).  Dell's third-party claim is representative of the Defendants' claims and alleges that:

> The Patent Portfolio License between MPEG LA, on behalf of its licensors including Alcatel, and Dell is a valid and enforceable contract pursuant to which Dell is licensed under the Patents-In-Suit. . . .  Lucent, intentionally and without justification, interfered with Dell's rights under that contract by purporting to assign away the Patents-In-Suit for the purpose of depriving Dell of a license to the Patents-In-Suit under the Patent Portfolio License.  Lucent committed its interference by unlawful means in that, among other things, its purported assignment of the Patent-In-Suit violate Delaware's Uniform Fraudulent Transfer Act and common law, and was in violation of Lucent's covenants under its Agreement and Plan of Merger with Alcatel.

(Dell's Answer ¶¶ 83, 85.)

The Court concludes that these allegations sufficiently allege an actual breach or disruption of a contractual relationship between Defendants and Alcatel.  Accordingly, the Court denies Lucent's motion to dismiss Defendants third-party claims for intentional interference with contract.

### 4.    Microsoft's and Gateway's Claims for Tortious Interference with Prospective Economic Advantage

The parties agree that the essential elements of this claim include: (1) an economic relationship containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to plaintiff proximately caused by defendant's acts.  New.net Inc. v. Lavasoft, 356 F.Supp.2d 1090, 1113-14 (C.D. Cal. 2004).  Furthermore, the plaintiff must allege that the conduct was "wrongful by some legal measure other than the fact of interference itself."  Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 393 (1995).

Lucent first argues that there could have been no interference because nobody had an obligation to license the Patents-in-Suit to the MPEG LA licensing pool.  This is contrary, however, to the facts alleged by Defendants.  As discussed above, Defendants allege that Lucent had an obligation, by virtue of the Merger Agreement and its SEC filings, to retain ownership of the Patents-in-Suit after the merger and therefore combine them with the Alcatel patent portfolio covered by the license.  (See, e.g. Gateway's Answer ¶¶ 69-70.)

Lucent further argues that any alleged interference cannot be wrongful because Defendants' related claims of fraudulent transfer and common law fraud are insufficient.  For substantially the same reasons that the Court has declined to dismiss these other claims, the Court concludes that Defendants have sufficiently alleged a wrongful interference.  Therefore, the court denies Lucent's motion to dismiss these

1    claims.

2            **5.    Microsoft's Claim that the Assignment of the Patents-in-Suit**
3                    **was a Void Act**

4            Lucent moves to dismiss Microsoft's declaratory relief claim that the assignment

5    of patents to MPT was a void act.  Microsoft alleges that the creation of MPT and

6    assignment of patents to it were either fraudulent or *ultra vires* acts and therefore void

7    *ab initio* under Delaware law.  Microsoft alleges that shortly before Lucent's merger

8    with Alcatel, Lucent created MPT and assigned the Patents-in-Suit to MPT to avoid

9    licensing obligations that would have resulted from the merger.  (See, Microsoft's

10   Answer ¶¶ 93-109.)  Microsoft further alleges that this transfer was in violation of the

11   Merger Agreement and therefore *ultra vires*.   (See, Microsoft's Answer ¶¶ 191-92.)

12   One Delaware court has observed that "[i]n the context of void acts, *ultra vires* acts . . .

13   include acts specifically prohibited by the corporation's charter, for which no implicit

14   authority may be rationally surmised, or those acts contrary to basic principles of

15   fiduciary law."   Solomon v. Armstrong, 747 A.2d 1098, 1114 n. 45 (Del. Ch. 1999).

16   Accepting Microsoft's allegations as true for purposes of this motion, as the Court is

17   legally required to do, the Court concludes that Microsoft has sufficiently pled that the

18   assignment was *ultra vires* and denies Lucent's motion to dismiss this claim.

19           **6.    Gateway's Claims for Breach of Contract and Breach of the**
20                   **Duty of Good Faith and Fair Dealing**

21           Lucent challenges Gateway's breach of contract claim, arguing that there was no

22   agreement between Lucent and Gateway at the time the Patents-in-Suit were assigned

23   to MPT.  Gateway responds by arguing that, under New York law: (1) Gateway is a

24   third party beneficiary of the Agreement Among Licensors between MPEG LA, Alcatel

25   SA, and Alcatel-Lucent; and (2) Lucent was bound by the agreement among licensors

26   because either or both of the following reasons: (a) when Lucent transferred the patents

27   to MPT, although the merger was not complete, it was already obligated to license these

28   patents to MPEG LA by virtue of its Merger Agreement with Alcatel SA; and (b) MPT

is a sham, and Lucent retained ownership and control of the patents after the date of the merger.

Lucent argues that Gateway cannot be a third party beneficiary because the language of the Agreement Among Licensors excludes this possibility. This, however, contradicts Gateway's factual allegations, which must be accepted as true for purposes of a motion to dismiss. Even though this language would, on its face, seem to support Lucent's argument, the Court must make any inferences in Gateway's favor at this stage of the proceeding. Since Gateway offers facts that, given such inferences, support its interpretation of the agreement, the Court denies Lucent's motion to dismiss Gateway's breach of contract claim.

Regarding the claimed breach of the duty of good faith and fair dealing, the parties' arguments essentially repeat those offered for the breach of contract claim. For substantially the same reasons as the previous claim, the Court denies Lucent's motion to dismiss.

### 7. Gateway's Claim for Violation of California Bus & Prof. Code § 17200 et. seq.

The California Code broadly prohibits any "unlawful, unfair or fraudulent business act or practice . . . ." See Cal. Bus. & Prof. Code § 17200 et. seq. There are three prongs of this portion of the statute, any one of which may constitute a violation. First, an "unlawful" business act or practice is one that is prohibited by law, where possible sources of law are defined broadly. See Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 ("[S]ection 17200 borrows violations of other laws and . . . makes them independently actionable.") (internal quotations omitted); People v. McKale, 25 Cal. 3d 626, 631-32 (Cal. 1979). Second, an "unfair" business act or practice is one that "threatens an incipient violation of antitrust law, or violates the spirit of one of those laws . . . , or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc., 20 Cal. 4th at 187. Finally, a "fraudulent" practice is defined more broadly than common law fraud and only requires a showing

that "members of the public are likely to be deceived." Express, LCC v. Fetish Group, Inc. 464 F.Supp.2d 965, 980 (C.D. Cal. 2006) (quoting Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 617-18 (1996)).  To extent that injunctive relief is sought, plaintiffs must also allege actual injury.  See Cal. Bus & Prof. Code §§ 17204, 17535.

In federal court, these allegations implicate two relevant pleading standards. First, to the extent that a federal pleading is grounded in fraud, it must meet the requirements of Rule 9(b).  As noted above, however, the elements of common law fraud law are not essential to a claim under the California unfair competition law.  See Vess v. Ciba-Geigy Corp. v. USA, 317 F.3d 1097, 1005-06 (9th Cir. 2003); Express, LCC, 464 F.Supp.2d at 980.  Therefore, Rule 9(b) only applies to California unfair competition law claims to the extent that a pleading avers facts constituting common law fraud, whether or not the term "fraud" is used.  See Vess, 317 F.3d at 1105.  The essential elements of fraud include "false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  Id.

In addition to possible Rule 9(b) requirements, and more relevant here, all allegations under Sections 17200 must "state with reasonable particularity the facts supporting the statutory elements of the violation."  Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993).

Gateway alleges that:

Lucent has misled, and continues to mislead, Gateway and the public by its false representations that it is upholding its obligations to the MPEG LA licensing consortium

Lucent fraudulently, misleadingly, and intentionally misrepresented that it assigned its entire right, title and interest in and to the Patents-In-Suit to MPT . . . knowing that the alleged assignment was made solely to circumvent Alcatel-Lucent's obligations . . . in light of ongoing and current litigation.

MPT misled, and continues to mislead, Gateway and the public by its false representations that it is a valid statute trust under [Delaware law].

MPT and Lucent's actions are untrue and deceptive and thus in violation of the California Business and Professions Code . . . .

(Lucent Answer ¶¶ 189-92.)  Gateway also alleges that it suffered actual injury as a

result.  (Id. ¶ 193.)  Section 17200 does not require a showing of common law fraud, and since Gateway's Section 17200 claim does not contain all of the elements of common law fraud, it must only meet the "reasonable particularity" standard of Khoury.

Gateway's pleadings meet the reasonable particularity standard to state a claim under the "fraudulent" act or practice prong of Section 17200.  This merely requires allegations that the public is likely to be deceived and, to the extent injunctive relief is sought, that the complainant suffered actual injury.  Gateway's pleadings meet these requirements, and the Court therefore denies Lucent's motion to dismiss this claim.

**III.    Motions to Dismiss For Lack of Subject Matter Jurisdiction**

**A.    Legal Standard**

Federal courts are courts of limited jurisdiction without general subject matter jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  They can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate.  See id.  Federal courts are presumptively without jurisdiction over civil actions and the burden of establishing the contrary rests upon the party asserting jurisdiction.  See id.; see also Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), authorizes a district court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy."  The DJA makes it possible for a potential infringer to sue a patent owner for a declaratory judgment of a patent's invalidity or unenforceability or for a finding of noninfringement.  See, e.g., Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1481-85 (Fed. Cir. 1998).

The sole requirement for a district court to have subject matter jurisdiction over a claim brought pursuant to the DJA is an "actual controversy."  See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1338.  An "actual controversy" within the meaning of the DJA is the same as an Article III case or controversy.  See id.  Therefore, a party bringing a declaratory judgment claim is only required to show that

1  under "all the circumstances," there is an actual or imminent injury that was caused by

2  the opposing party, is redressable by judicial action, and is of "sufficient immediacy and

3  reality to warrant the issuance of a declaratory judgment."  Id.  When evaluating

4  declaratory judgments at the motion-to-dismiss stage, courts examine the facts as

5  alleged in the complaint and any unopposed declarations.  Medimmune, Inc. v.

6  Genentech, Inc, 127 S.Ct. 764, 767 (2007).

7       **B.     Lucent's Motion to Dismiss Defendants' Declaratory Judgment**

8            **Claims for Lack of Actual Controversy**

9       Lucent argues that the court lacks subject matter jurisdiction over Defendants'

10 various third-party claims seeking declaratory judgment that there can be no

11 infringement for reasons including non-infringement, invalidity, inequitable conduct,

12 laches, equitable estoppel, unclean hands, existence of a valid license, and the allegedly

13 void nature of the assignment of patents to MPT.  Lucent argues that since it is not

14 asserting the Patents-in-Suit against the Defendants, there can be no case or

15 controversy.   This argument, however, presumes facts contrary to Defendants'

16 pleadings and is therefore unpersuasive on a motion to dismiss.   The essence of

17 Defendants' allegations is that MPT is a sham entity and that Lucent remained the real

18 owner of the Patents-in-Suit and controlled the allegedly fraudulent sequence of events

19 leading to this litigation.  Taking these allegations as true for purposes of this motion,

20 there is an actual, redressable, and immediate controversy between the Defendants and

21 Lucent.  The Court therefore denies these motions.

22 **IV.    Motions to Strike or Dismiss Claims as Duplicative**

23       **A.     Legal Standard**

24       Generally, a party may not pursue "two separate actions involving the same

25 subject matter at the same time in the same court and against the same defendant."

26 Adams v. California Dept. of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007).  The

27 question here is whether claims from the first action, upon reaching a final disposition,

28 would preclude the claims from the second action.  See Id. at 688-89.  To determine

this, courts examine whether the causes of action and parties are identical between both matters. Id. at 689. Neither party appears to dispute that the parties of these two cases are identical, thus requiring that the Court only examine the identity of the causes of action. The Ninth Circuit has adopted a transaction test to determine whether causes of action are identical. Id. at 689. The most important factor is whether the suits arise out of the same transactional nucleus of facts. Courts also consider: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, (2) whether substantially the same evidence is presented in the two action, and (3) whether the two suits involve infringement of the same right. Id.

> **B.      Lucent's Motion to Strike or Dismiss Certain Gateway Claims as Duplicative of Claims from the '02 Case**

Lucent moves to dismiss the following Gateway claims as duplicative of claims in the '02 Case: breach of contract, violation of 15 U.S.C. § 1, monopolization and attempted monopolization under 15 U.S.C. § 2, breach of duty of good faith and fair dealing, tortious interference with contract, and tortious interference with prospective economic advantage. The only substantial difference between the claims Gateway asserts here and in the '02 Case appears to be the patents involved. For example, Gateway's breach of contract counterclaim from the present case states:

> By virtue of the establishment of MPT and the alleged assignment of patents to it, Lucent breached and is continuing to breach its agreement with MPEG-LA and thereby has damaged and is damaging Gateway.

(Gateway's Answer ¶ 135.) Similarly, the allegedly duplicative claim from the '02 Case states:

> By virtue of establishment of MPT and the assignment of patents that Lucent and MPT allege are required to practice the MPEG LA standard, Alcatel-Lucent breached its agreement with MPEG-LA and Gateway and damaged Gateway by depriving Gateway of the benefit of being able to rely upon the applicable MPEG standards and its portfolio license thereto.

(02-CV-02060, Doc. No. 1410 ¶ 325.)

Nevertheless, the Court denies the motion without prejudice. The Court cannot

say at this stage that these suits, which implicate different patents, involve infringement of the same right.

## CONCLUSION

For the reasons above, the Court denies MPT's motion to strike Dell's defenses and dismiss Dell's counterclaim for inequitable conduct. The Court also denies MPT's corresponding motions against Microsoft and Gateway. The Court denies Lucent's motion to dismiss Gateway's third-party complaint and denies this motion as joined by MPT, though this dismissal is without prejudice as to the allegedly duplicative claims from the '02 Case. The Court denies Lucent's corresponding motions to dismiss the third-party complaints of Microsoft and Dell.

IT IS SO ORDERED.

DATED:  September 10, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.