**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MULTIMEDIA PATENT TRUST,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>MICROSOFT CORPORATION, GATEWAY INC., GATEWAY PROFESSIONAL LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC, GATEWAY DIRECT, INC., GATEWAY U.S. RETAIL, INC., and DELL INC.,<br><br>　　　　　　　　　Defendants.<br>_____<br><br>MICROSOFT CORPORATION, GATEWAY INC., GATEWAY PROFESSIONAL LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC, GATEWAY DIRECT, INC., GATEWAY U.S. RETAIL, INC., and DELL INC.,<br><br>　　　　　　　　　Counterclaimants,<br>　vs.<br><br>MULTIMEDIA PATENT TRUST,<br><br>　　　　　　　　　Counter-defendant.<br>_____ | CASE NO. 07-CV-0747-H (CAB)<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) |

| | |
|---|---|
| | MICROSOFT CORPORATION, GATEWAY INC., GATEWAY PROFESSIONAL LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC, GATEWAY DIRECT, INC., GATEWAY U.S. RETAIL, INC., and DELL INC., |
| | Third-party Plaintiffs, |
| | vs. |
| | LUCENT TECHNOLOGIES INC., |
| | Third-party Defendant. |

On April 24, 2007, plaintiff Multimedia Patent Trust ("MPT") filed a complaint against defendants Microsoft Corporation ("Microsoft"), Gateway Inc., Gateway Professional LLC, Gateway Companies, Inc., Gateway Manufacturing LLC, Gateway Direct, Inc., Gateway US Retail, Inc. (collectively "Gateway"), and Dell Incorporated ("Dell," and collectively with Gateway and Microsoft "Defendants"). (Doc. No. 1.) MPT is a Delaware Statutory Trust created by Lucent Technologies Inc. ("Lucent") under the Delaware Statutory Trust Act, 12 Del. Code Ann. § 3801, *et seq*. (Id. ¶¶ 4-5.) Lucent purportedly transferred to MPT all of its interest in three patents (the "Patents-in-Suit" or "Patents"): United States Patent Number 5,136,377, "Adaptive Non-Linear Quantizer," issued to James D. Johnston et al. on August 4, 1992; United States Patent Number 5,500,678, "Optimized Scanning of Transform Coefficients in Video Coding," issued to Atul Puri on March 19, 1996; and United States Patent Number 5,563,593, "Video Coding with Optimized Low Complexity Variable Length Codes," issued to Atul Puri on October 8, 1996. (Id. ¶¶ 6, 18-21, Ex. A-C.) MPT alleges that Defendants infringed the Patents-in-Suit in violation of 35 U.S.C. § 1, *et seq*. (Id. ¶¶ 3, 22-42.)

On June 29, 2007, Defendants filed answers to MPT's complaint. (Doc. Nos. 30-32.) Defendants also asserted counterclaims against MPT and third-party claims against Lucent, joining it to this action. (Id.)

On September 11, 2007, Dell filed its present motion to dismiss MPT's complaint for lack of subject matter jurisdiction. (Doc. Nos. 104, 109-10.) That same day, both Gateway and Microsoft joined in the motion. (Doc. Nos. 107, 111.) On September 11, Microsoft also submitted its own similar motion to dismiss. (Doc. Nos. 112, 114-15.) MPT responded to these motions on September 25, 2007. (Doc. Nos. 123-24, 127.) MPT's response to Microsoft's motion incorporates the arguments from its opposition to Dell's motion, citing their substantial similarity. (See Doc. No. 123.) On October 1, 2007, Microsoft and Dell filed reply briefs on their motions. (Doc. Nos. 136, 138, 146-47.) On October 5, 2007, MPT filed a supplemental opposition regarding Judge Brewster's recent decision on various summary judgment motions in case 02-CV-2060, which also involves the creation of MPT. (Doc. No. 145.) This brief was not timely filed and not filed with the Court's leave. Though the Court therefore declines to consider the supplemental opposition's particular argument regarding Judge Brewster's order, the Court does take judicial notice of the order. See Lucent Technologies, Inc. v. Gateway, Inc., No. 02-CV-2060, slip op. (S.D. Cal. October 2, 2007)

On October 9, 2007, the Court held a hearing on this motion. Robert A. Appleby and Ephraim D. Starr appeared on behalf of MPT. Joel M. Freed and James S. Blackburn appeared on behalf of Dell. John E. Gartman appeared on behalf of Microsoft. Richard Clegg appeared on behalf of Gateway.

For the reasons discussed below, the Court **DENIES** Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

## **Background**

The parties dispute whether MPT has standing to sue for infringement of the Patents-in-Suit following Lucent's purported creation of MPT and assignment of the Patents-in-Suit to MPT. Although they dispute the implications of these actions, the parties do not dispute which documents govern the transactions. The creation of MPT is governed by the "Trust Agreement" executed between Lucent and various trustees on November 21, 2006. (See Decl. James S. Blackburn Supp. Dell's Mot.

Dismiss MPT's Compl. Pursuant Fed. R. Civ. P. 12(b)(1) Ex. A. ("Agreement" or "TA").)  The assignment of the Patents-in-Suit is governed by the "Patent Assignment" executed between Lucent and MPT on November 28, 2006.  (See Id. Ex. B ("Assignment" or "PA").)

The Trust Agreement created MPT under Delaware's Statutory Trust Act, 12 Del. Code § 3801, *et seq.*  (TA § 2.)  To manage MPT, the Agreement defines the roles of a Licensing Trustee, a Litigation Trustee, an Administrative Trustee, and a Trust Advisor.  (TA §§ 4-5, 6.1.)  Lucent appoints the Trust Advisor for one year renewable term.  (TA § 6.1(a).)  The Trust Advisor's powers include: removing trustees, appointing successor trustees, approving litigation settlements proposed by the Litigation Trustee, and monitoring the Licensing and Litigation Trustees in the performance of their duties.  (TA § 6.1(e).)

Both Lucent and the Trust Advisor have the power to remove a trustee with or without cause, though Lucent is limited to removing each trustee "no more than once in each calendar year."  (TA § 4.3.)  The Licensing Trustee is charged with maximizing the value of the trust assets, primarily through licensing the trust's patents.  (TA § 5.1(a)(i).)  The Agreement grants the Licensing Trustee powers including "the exclusive power to sell or otherwise monetize the Trust Patents owned by the Trust; provided, however that any such sale or monetization shall require [Lucent's] prior written consent."  (Id.)  The Litigation Trustee has power to "initiate, prosecute, defend, negotiate and settle (subject to the Trust Advisor's approval . . .) patent infringement and other Trust litigation . . . ."  (TA § 5.1(b).) The Litigation Trustee must provide Lucent at least sixty days written notice before commencing litigation against "a customer, business partner, or supplier of [Lucent] (or any of its Affiliates) . . . ."  (Id.)

The Agreement grants Lucent nearly all of the equitable interest in trust assets.  Its interest includes at least 99% of payments of income and 98% of payments of principal, with other amounts going to the Lucent Technologies

Foundation, a Delaware nonprofit.  (See TA §§ 1.2, 3.1, 3.2).

Turning to the Patent Assignment, the first section of that document begins:

> [Lucent], subject to (a) existing rights and licenses (and associated obligations) of third parties, and [Lucent's] and its subsidiaries obligations to such third parties, and (b) the license grant set forth . . . below, does hereby assign, convey, transfer and deliver, and agrees to assign, convey, transfer and deliver to [MPT] . . . [Lucent's] entire right, title and interest in and to the Trust Patents for all countries, jurisdictions and political entities of the world, along with the right to sue for past infringement (including all current and future claims and causes of action) . . . .

(PA § 1.)  In the cross-referenced license grant, MPT gives Lucent and related entities:

> a worldwide, perpetual, royalty-free, non-exclusive, non-transferable (subject to [cross-referenced exceptions]) license (with no right to sublicense) and release for past infringement (as applicable) under the Trust Patents to make, have made, use, lease, sell, offer to sell, and/or import for any and all purposes and for all current and future products and/or services thereof.

(PA § 4.)  The grant also includes "the right to convey to any customer of the grantee . . . rights to use and resell such product or service as sold or leased by such grantee . . . ." provided that such grants are not used for certain combinations with other products or services, or for methods or processes other than inherent use of the product or service itself.  (Id.)  In the section cross-referenced by the license grant, the parties contemplate "personal performance, each by the other, and intend that this Patent Assignment and/or any of the licenses granted hereunder not be assigned or transferred without the party's express written consent . . . ." (PA § 13.)  That section also provides certain exceptions involving corporate restructuring or transfer to Lucent subsidiaries or successors.  (Id.)

With regard to prosecution and maintenance of the Trust Patents, the Assignment states that Lucent is only responsible for certain expenses incurred or due on or before the Assignment's effective date.  (PA § 7.)  Otherwise, Lucent is not responsible for such expenses following the assignment.  (Id.)

## Discussion

To bring a patent infringement suit, a party must meet both constitutional and prudential standing requirements. See Morrow v. Microsoft Corp., No. 2006-1512, 2007 WL 2713248 at *5 (Fed. Cir. Sept. 19, 2007). Constitutional standing inquiries enforce the Article III requirement that limits federal courts to resolution of "cases" and "controversies." Id. To meet constitutional standing requirements a party must suffer injury in fact. See id. A patent bestows the right "to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." Id.; 35 U.S.C. §§ 154, 271. A party suffers injury in fact when they hold exclusionary rights granted by the Patent Act and another violates those rights. See Morrow, 2007 WL 2713248 at *5.

The Federal Circuit has established three categories of plaintiffs for the purpose of analyzing standing in patent cases. See id. at *6-7; Propat Intern. Corp. v. RPost, Inc., 473 F.3d 1187, 1189-94 (Fed. Cir. 2007). First, a party that holds all legal rights to a patent has standing to sue in its own name. Morrow, 2007 WL 2713248 at *6. This first category also includes parties who have received a transfer of "all substantial rights" from the patentee, which amounts to an assignment or transfer of title. Id. Second, plaintiffs who hold exclusionary rights, but not all substantial rights, have standing provided that they meet prudential standing requirements by suing in the patent owner's name and joining the owner to the suit. Id.; see also Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 468 (1926) ("The presence of the owner of the patent as a party is indispensable" to give jurisdiction and to enable alleged infringer to resolve all claims in one action). Finally, a plaintiff lacks standing if they hold less than all substantial rights and lack exclusionary rights under the patent. Id. at *7. Typically, exclusive licensees of exclusionary rights fall into the second category, while "bare" licensees fall into the third. See Id. at *6-7; Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1345-48 (Fed. Cir. 2001) (discussing the standing requirements for exclusive licensees).

Defendants argue that, under the terms of the Trust Agreement and Patent Assignment, MPT is a bare licensee in the third category. MPT counters that it is the holder of all substantial rights or, in the alternative, that it is an exclusive licensee and Lucent, as the owner, could easily be realigned as a plaintiff to meet prudential standing requirements.[1]

When examining the effect of a transfer of patent rights, courts look at the legal effect of the provisions, not the labels used. See Waterman v. Mackenzie, 138 U.S. 252, 256 ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."); accord Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 874. To this end, courts examine whether "it appears from the agreement and surrounding circumstances that the parties intended that the patentee surrender all his substantial rights to the invention." Vaupel, 944 F.2d at 874 (quoting Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011 (Ct. Cl. 1967)).

The Court will therefore examine the Trust Agreement and Patent Assignment to determine their legal effect and the apparent intention of the parties.[2] Section one of the Assignment, on its face, purports to be an assignment of legal title to the Patents, referring to Lucent's entire "right, title and interest." (PA § 1.) Other provisions, however, place restrictions on MPT's effective rights. First, the Trust Agreement requires Lucent's prior written consent before MPT can "sell or otherwise monetize the Trust Patents." (TA § 5.1(a)(i).) Next, the Assignment was

---

[1] Although the Court ultimately concludes that MPT may sue in its own name, this approach appears to be feasible if it is later found to be necessary.

[2] The parties' briefs did not directly address the question of what law should apply to the interpretation of each agreement. On its face, the Trust Agreement purports to be governed by Delaware law, and the Patent Assignment purports to be governed by New York law. (See TA Preamble; PA § 11.) Since the parties' briefs are consistent with these positions and there are no contentious issues regarding contract or trust law, the Court assumes that these are the applicable bodies of law.

made subject to "existing rights and licenses (and associated obligations) of third parties." (PA § 1.)  Under the Assignment, MPT conveyed a nonexclusive license back to Lucent. (PA § 4.)  Neither party is able to assign or transfer the Assignment or the licenses granted under the Assignment, subject to certain exceptions applicable to Lucent. (PA § 13.)  Finally, Defendants argue that Lucent's equitable interest in the trust assets constitutes a limitation on MPT's rights. (See TA §§ 1.2, 3.1, 3.2).  The Court will examine each purported restriction to see what impact, if any, these may have on MPT's standing.

### 1. Lucent's Retention of Veto Power Over Further Sales

Of all the limitations, the restriction on sale or monetization of the trust's patents without Lucent's written consent may raise the most serious challenge to MPT's standing.  The Federal Circuit has stated that "[t]he right to dispose of an asset is an important incident of ownership . . . ."  Propat Intern. Corp., 473 F.3d 1187, 1191 (2007).  In Propat, the court stated that a "right to veto any transfer of [transferee's] rights under the agreement is particularly significant," especially where the party retaining veto power could exercise it arbitrarily.  Id.  On several occasions, the Federal Circuit has suggested that restrictions on the right to assign may be fatal to standing.  In Sicom Systems, Ltd. v. Agilent Technologies, Inc., 427 F.3d 971, 979 (Fed. Cir. 2005), the Federal Circuit approved the District Court's conclusion that a restriction on the right to assign was a "fatal reservation of rights."  The Sicom court also cited with approval a District of Delaware decision which stated that "[i]n light of this harsh restriction on alienation in the present case, this Court need look no further in determining that [the licensor] reserved substantial rights . . . ."  Pfizer Inc. v. Elan Pharm. Research Corp., 812 F. Supp. 1352, 1373 (D. Del. 1993) (cited with approval by Sicom Sys., Ltd., 427 F.3d at 979.).

A closer reading indicates that reserving veto power on the right to transfer is merely a factor weighing against standing, not a independently sufficient condition to prevent it.  For example, in Intellectual Property Development, Inc., the court

specifically characterized limits on the assignment of rights as "a factor," not a sufficient condition, in finding a transfer of fewer than all substantial rights. Intellectual Prop. Dev., Inc., 248 F.3d at 1345. In Morrow, the Federal Circuit examined a situation where an owner's patent rights had been divided between multiple trusts. Although one trust's ability to control and transfer its patent rights was subject to the consent of others, the court noted that this was "not significantly restrictive of [the trust's] exclusionary rights."[3] There, that trust also held title and the rights to sell, to grant exclusive and nonexclusive licenses, to grant the right to sublicense, and to transfer any of its rights to another party. Morrow, 2007 WL 2713248 at *8; see also Speedplay Inc. v. Bebop, Inc., 211 F.3d 1245, 1251-52 (holding that inability to convey interest in a license without consent did not defeat standing where it could not be withheld unreasonably).

The parties point to no case in which a court has found that reservation of a veto power over further transfers, by itself, defeated the transferee's standing. In Sicom, where standing was lacking, the assignor retained other rights including legal title, the right to sue for infringement other than commercial infringement, the right to continue operating under the technology, the right to levy additional royalties or other consideration, the right to grant contracts and sub-contracts to further develop the invention, and the right to offer sublicenses under any improvements or corrections developed by the assignee. Sicom Sys., Ltd., 427 F.3d at 978-79. In Propat, the situation was somewhat closer to the present circumstances, but the assignor also retained legal title and the right to veto licensing and litigation decisions, provided that the later could not be unreasonably withheld. Propat Intern. Corp., 473 F.3d at 1190-91. Similarly, in Pfizer the assignor retained other rights including legal title and manufacturing rights. Pfizer, Inc., 812 F. Supp. 1352, 1372-

---

[3] Defendants rightly note that these statements were not dispositive since they involved the AHLT trust, whose standing was not at issue on appeal. The Court recognizes that they might therefore be considered dicta, and affords them appropriate weight in reaching its decision.

73. It is noteworthy that all of these cases involved the retention of legal title by the party purporting to make an assignment.

Therefore, the Court concludes that Lucent's veto power is not sufficient to defeat standing by itself. The Court must view the veto power in connection with other reservations to determine if Lucent failed to assign all substantial rights.

### 2.  Lucent's Retention of a License

In the Patent Assignment, MPT grants a broad license to Lucent and its affiliates. (PA § 4.) Although an assignor's retention of a license has been a factor considered in concluding that an assignee lacked standing, this has not been found sufficient to defeat standing. See Sicom Sys., Ltd., 427 F.3d at 978-79; Propat Intern. Corp., 473 F.3d at 1190-91; Pfizer, Inc., 812 F. Supp. 1352, 1372-73. In all of the case just cited, the assignor retained legal title to the patents. Defendants also cite Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538 (Fed. Cir. 1995), but it is not to the contrary. There, the court found that the contracts in question were essentially sales contracts for products and therefore did not convey exclusionary rights in any patents. Id. at 1552-53. This situation involves much more than the "grant of a bare license to sell an invention in a specified territory." Id. at 1553.

The license grant also allows Lucent and its affiliates to grant its customers rights to use or resell products or services covered by the license. (PA § 4.) This does not affect the Court's analysis for the retention of a license. Without such a provision, certain products or services might not be commercially viable, so it is reasonable to expect its inclusion. Furthermore, this may not be a real limitation to the extent that it merely codifies rights normally accompanying the unrestricted sale of a patented product. See Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp., Inc., 123 F.3d 1445, 1451 (Fed. Cir. 1997).

### 3.  Existing Rights and Licenses of Third Parties

Defendants have not pointed to any evidence suggesting that third party rights and licenses actually exist, let alone that they substantially limit MPT's rights. In

any event, the mere potential existence of such rights does not defeat standing. Defendants contend that an assignment cannot convey all substantial rights if made subject to rights of existing licensees. See Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372 (Fed. Cir. 2000).

Prima Tek II states that, in determining whether there has been a transfer of all substantial rights, courts "pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." Prima Tek II, L.L.C., 222 F.3d at 1379 (emphasis in original). There, the court concluded that the alleged assignee's rights had been extinguished by a requirement that it must sub-license its ability to exclude only to one specific entity. Id. Nowhere does Prima Tek II state that any prior licensing rights, no matter how narrow, must necessarily defeat standing. See Id. at 1379-80.

Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128 (Fed. Cir. 1995) is also distinguishable because unlike the present situation, the licensor there retained a right to sue. Id. at 1131-33. Accordingly, the court concludes that MPT's standing is not diminished by the fact that the Assignment was conditioned upon existing rights or licenses of third parties.

**4.     Other Limitations on Assignment of Rights**

Defendants argue that, like the veto power over sale or monetization, the prohibition on transfer of the Patent Assignment is a limitation on transfer of rights that prevented MPT from receiving all substantial rights in the Patents. On its face, however, this provision only restricts transfers of the Agreement itself and the licenses granted under the Agreement. (See PA § 13.) It does not place restrictions on the transfer of trust patents themselves, as does the Trust Agreement. Therefore, the Court concludes that this section does not pose a substantial obstacle to MPT's standing.

**5.     Lucent's Equitable Interest in the Patents**

Recently, the Federal Circuit observed that "[t]he question as to how bankruptcy or trust law relationships affect the standing analysis in a patent infringement case is a question of first impression in this court." Morrow, 2007 WL 2713248 at *3. Defendants suggest that Lucent's ability to enforce and control its equitable interest in the trust assets, through court action or removal of trustees, constitutes a restriction on MPT's rights in the patents.

The retention of "a right to a portion of the proceeds of commercial exploitation of a patent . . . does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent." Propat, 473 F.3d at 1191 (citing Rude v. Westcott, 130 U.S. 152, 162-63 (1889); Vaupel, 944 F.2d at 875). In Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574 (Fed. Cir. 1991), the Federal Circuit considered a related question: whether an alleged holder of equitable title to patents had standing to bring an action for infringement. There, the court concluded that an agreement to assign a patent, although it might confer equitable title, did not confer legal title and was therefore insufficient to support standing for the equitable owner. Id. at 1580-81. Morrow is also consistent with this view. The court concluded that a beneficiary's future interest in 45% of a trust's remaining assets did not affect the outcome of its standing analysis. Morrow, 2007 WL 2713248 at *9.

The Court concludes that the rationale of these cases remains controlling here. Lucent's equitable interest in the Patents should not affect the Court's determination of whether MPT has legal standing to pursue infringement claims.

**6.     Summary**

In summary, the Court concludes that MPT has standing to bring this lawsuit. Defendants have not pointed to any cases in which a veto power over sale or monetization of patents and a retention of a license by the assignor were sufficient, without more, to defeat standing. Furthermore, MPT obtained rights, including legal title, that were lacking in cases where these factors contributed to holdings that a plaintiff lacked standing. Construing these instruments on their face for purposes of

this motion to dismiss, the Court concludes that Lucent assigned all substantial rights in the Patents-in-Suit to MPT, and MPT therefore has standing sue in its own name.[4]

### Conclusion

For the reasons discussed above, the Court **DENIES** Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

IT IS SO ORDERED.

DATED: October 9, 2007

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.

---

[4] The Court notes that this conclusion is consistent with Judge Brewster's recent order in Lucent Technologies, Inc. v. Gateway, Inc., No. 02-CV-2060, slip op. (S.D. Cal. October 2, 2007), which considered similar issues in the context of summary judgment motions. See id. at 4-9 (examining the effectiveness of the purported assignment to MPT).